MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2023 ME 3
Docket:        And-22-121
Submitted
  On Briefs:   October 19, 2022
Decided:       January 10, 2023

Panel:         MEAD, JABAR, HORTON, and CONNORS, JJ.

ASHLEY L. WHITMORE

v.

NICHOLAS A. WHITMORE

HORTON, J.

[¶1]  Ashley L. Whitmore appeals from a judgment of the District Court (Lewiston, *Montgomery, J.*) on her complaint for divorce from Nicholas A. Whitmore.  Ashley[1] contends that the court erred in its award of parental rights, primary residence, and rights of contact regarding the parties' child, and erred in other rulings, including its determination of Nicholas's income for purposes of child support and its decision not to award Ashley attorney fees.  We determine the court's findings to be insufficient to support the parental rights portions of the judgment and agree that the court erred in

---

[1] Because the parties share the same surname, we refer to them by their first names.

2

determining Nicholas's income. We therefore vacate the judgment and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

[¶2] In March 2021, Ashley filed a complaint for divorce against Nicholas based on irreconcilable differences. On Ashley's request, a Family Law Magistrate (*Spooner, M.*) issued an interim child support order requiring Nicholas to pay Ashley $97 per week in child support.[2] After a subsequent interim hearing, the court (*Montgomery, J.*) issued another interim order, which provided that the parties' child would reside primarily with Ashley and that Nicholas would have telephone contact nightly and in-person contact two afternoons per week, either in a public location or in the presence of specified family members.

[¶3] After holding a final hearing, the court issued a divorce judgment in February 2022.[3] The court found the following facts, which are supported by competent evidence admitted during the hearing, *see Low v. Low*, 2021 ME 30, ¶¶ 2, 9, 251 A.3d 735:

---

[2] On the child support worksheet supporting the interim child support order, the magistrate noted that Nicholas's stated gross annual income of $31,167 was "w/out verification."

[3] The court does not appear to have appointed a guardian ad litem at any point during the proceedings. *See* 19-A M.R.S. § 1507(1) (2022).

- Ashley and Nicholas are the parents of a child who was six years old at the time of the hearing. Each of them loves the child and wants to do what is best for her.

- The parties are also engaged, however, in an ongoing power struggle centered on the child that leaves them focused more on themselves than on the child's well-being. They exhibit inflexibility and communicate with one another with "sarcasm, judgment, blame, and mistrust." Each has used the court's interim order "as a cudgel against the other." They have shown an inability to co-parent successfully, and their power struggle risks harming the child emotionally and psychologically.

- Nicholas "has struggled with some concerning mental health issues," including suicidality, in the past. At the time of the hearing, he was attending weekly counseling; his mental health had improved significantly; and the National Guard, his employer, had lifted a previously imposed restriction on his possession of firearms.[4]

[¶4] In the divorce judgment, the court ordered that parental rights and responsibilities would be shared and that the child would reside with each parent roughly one-half of the time. The court also ordered Nicholas to continue individual counseling until he is "discharged" by his counselor and to submit a "record of his completion of his therapy" to Ashley and the court at that time.[5] As part of its determination of child support, the court found that

---

[4] Contrary to Ashley's suggestion, the court's findings that Nicholas was engaged in mental health counseling and that his mental health had improved significantly are supported by competent evidence admitted during the final hearing.

[5] The court stated that it would interpret any future "statements or threats referencing suicide" by Nicholas as a substantial change in circumstances. *See Jackson v. MacLeod*, 2014 ME 110, ¶ 21, 100 A.3d 484 (explaining that a parent moving to modify a parental rights and responsibilities order "must demonstrate that a substantial change in circumstances has occurred since the previous decree").

4

Ashley's annual gross income was $37,000 and Nicholas's annual gross income was $24,666. Those findings were incorporated into a final child support order that required Ashley to pay Nicholas $78 per week in child support. The court also ordered that the parties would alternate claiming the child as a dependent on tax filings each year and denied Ashley's request for attorney fees.

[¶5] Ashley filed a timely motion for further findings, amendment of the judgment, or a new trial, along with proposed further findings. *See* M.R. Civ. P. 52(b), 59(a)-(b), (e). In her motion, Ashley asked the court to (1) find that shared residency was not in the child's best interest and order primary residence with her and supervised contact with Nicholas one afternoon per week; (2) find that Nicholas's annual income was $73,583, and amend its child support and tax filing orders accordingly; (3) state the factual basis for its denial of her request for attorney fees; and (4) rule on her request, made during the final hearing, for an order requiring Nicholas to pay a child support arrearage that had accumulated while the interim order was in effect. The court denied the motion without explanation.

[¶6] Ashley timely appealed. *See* 14 M.R.S. § 1901(1) (2022); M.R. App. P. 2B(c).

## II. DISCUSSION

**A.** **Sufficiency of Findings Regarding Parental Rights and Responsibilities, Residence, and Contact in Relation to the Best Interest Factors**

[¶7] Ashley argues that the court's orders concerning parental rights and responsibilities, the child's residence, and Nicholas's contact with the child constitute an abuse of discretion because, despite Ashley's motion for further findings, the court failed to state the factual basis for those decisions or analyze the child's best interest in accordance with 19-A M.R.S. § 1653(3) (2022). We review the factual findings underlying a divorce judgment for clear error and an award of parental rights and responsibilities for an abuse of discretion. *Bergin v. Bergin*, 2019 ME 133, ¶ 4, 214 A.3d 1071. Because the trial court denied Ashley's motion for further findings of fact, we cannot assume that the court made any findings that it did not expressly state. *See Klein v. Klein*, 2019 ME 85, ¶ 6, 208 A.3d 802. We review the denial of a motion for further findings for an abuse of discretion. *Id.* ¶ 5.

[¶8] According to 19-A M.R.S. § 1653(3), in making an award of parental rights and responsibilities and determining a child's residence and parent-child contact, a divorce court "shall apply the standard of the best interest of the child" and "shall consider" a list of factors set forth in the statute. The court

need not "robotically" address every factor in an effort to make clear that it has considered them, "so long as it is otherwise evident that the court has evaluated the evidence with the best interest factors in mind." *Nadeau v. Nadeau*, 2008 ME 147, ¶ 35, 957 A.2d 108. "The findings should . . . 'demonstrate that the court considered the best interest factors by expressly analyzing [those] factors most relevant under the circumstances presented by the case.'" Levy, *Maine Family Law* § 6.3[2][a] at 6-14 (8th ed. 2013) (quoting *Nadeau*, 2008 ME 147, ¶ 35, 957 A.2d 108) (alteration omitted); *see Cyr v. Cyr*, 432 A.2d 793, 797 (Me. 1981) (explaining that the trial court need not "give detailed findings on each and every factor," but that "there must be some indication in the record that the [court] considered those factors and sufficient factual findings in the custody order to allow the appellate court to determine the grounds for the [court's best interest] decision"); *Grant v. Hamm*, 2012 ME 79, ¶ 13, 48 A.3d 789 ("[T]he court has a duty to make findings sufficient to inform the parties of the reasoning underlying its conclusions and to provide for effective appellate review . . . ." (quotation marks omitted)).

[¶9] Here, the judgment contains no reference to the factors as a whole or to any factor in particular, and no indication of how the evidence relevant to any factor supports the court's parental rights, residence, and parental contact

determinations. The court's only reference to the child's best interest appears in its finding that the parties' power struggle distracts them from advancing the child's best interest and risks harming the child. That finding alone could implicate several statutory best interest factors,[6] but the court did not explain the connection between its findings, the factors, and the child's best interest. Because the court also denied Ashley's request for further findings, the factual basis and reasoning for its decisions concerning shared parental rights, shared primary residence, and contact remain unclear. We must therefore vacate the judgment and remand for the trial court to issue an amended judgment that includes additional findings as necessary to set forth the basis for the same or different determinations regarding parental rights and responsibilities, residence, and contact. *See Ehret v. Ehret*, 2016 ME 43, ¶¶ 9, 16, 135 A.3d 101.

---

[6] These include "[t]he relationship of the child with the child's parents and any other persons who may significantly affect the child's welfare," 19-A M.R.S. § 1653(3)(B) (2022), "[t]he capacity of each parent to allow and encourage frequent and continuing contact between the child and the other parent," *id.* § 1653(3)(H), "[t]he capacity of each parent to cooperate or to learn to cooperate in child care," *id.* § 1653(3)(I), and "[w]hether allocation of some or all parental rights and responsibilities would best support the child's safety and well-being," *id.* § 1653(3)(S). The judgment contains other findings that could be relevant to the statutory best interest factors, such as that the child is six years old, that the parties love the child and want what is best for her, and that Nicholas's mental health has improved since some previous time. *See id.* § 1653(3)(A), (F), (N). But we cannot tell from the judgment what significance (if any) the court placed on these facts in relation to the statutory factors and the child's best interest.

## B.    Finding Regarding Nicholas's Annual Income and Associated Issues

[¶10] Ashley argues that the court committed clear error by finding that Nicholas's annual gross income was $24,666, and that we should therefore vacate the trial court's child support order. "We review factual findings regarding a party's income for clear error," *Brown v. Brown*, 2007 ME 89, ¶ 11, 929 A.2d 476, and we review an award of child support for an abuse of discretion, *Dube v. Dube*, 2016 ME 15, ¶ 14, 131 A.3d 381.

[¶11]   The evidence concerning Nicholas's income that was admitted during the final hearing consists of only the following:

- Copies of photos of Nicholas's (unsigned) financial statement from August 2021 indicating that Nicholas was unemployed at that time, that his gross income "so far" in 2021 was $24,666.24, and that his gross income in 2020 was $73,583.

- Nicholas's testimony that his adjusted gross income in 2020 was $73,583; that his current job with the National Guard involved an unpredictable string of deployments; that he was unemployed between the end of July 2021 and the end of September 2021 due to a lack of state funding; and that at the time of the hearing in December 2021 he was making "around $2300" every two weeks.

[¶12]   That record does not support the court's finding that Nicholas's annual gross income was only $24,666.  We therefore vacate the child support order to enable the court, on remand, to incorporate a different figure for Nicholas's income into a new child support order.  *See McLean v. Robertson*,

2020 ME 15, ¶¶ 13-14, 225 A.3d 410; *Dube*, 2016 ME 15, ¶ 14, 131 A.3d 381. In connection with its income and child support determinations, the court should also determine whether Ashley's request that the court order Nicholas to pay past-due child support is properly before it and, if so, whether that request should be granted. The court may also reconsider its allocation of the dependency exemption for tax purposes. *See Coppola v. Coppola*, 2007 ME 147, ¶ 24, 938 A.2d 786; 19-A M.R.S. § 2007(3)(L) (2022).

[¶13] Ashley also argues, based on the erroneous finding concerning Nicholas's income, that the court erred by declining to order Nicholas to pay her attorney fees. "In deciding whether to award attorney fees, the court has discretion to consider all factors that reasonably bear on the fairness and justness of the award. Relevant factors include the parties' relative capacity to absorb the costs of the litigation and conduct by one party that increases the costs of the litigation." *Jandreau v. LaChance*, 2015 ME 66, ¶ 29, 116 A.3d 1273 (citation and quotation marks omitted). The record does not indicate the basis for the court's denial of Ashley's attorney fees request. Because the court's calculation of Nicholas's income may have influenced that decision, the court on remand should reconsider whether to award Ashley attorney fees. *See McLean*, 2020 ME 15, ¶ 19, 225 A.3d 410 (remanding for reconsideration of

attorney fees in similar circumstances because "the court must consider the parties' relative abilities to pay the costs of litigation").

The entry is:

> Judgment vacated.  Remanded for further proceedings consistent with this opinion.

---

Verne E. Paradie, Jr., Esq., Lewiston, for appellant Ashley L. Whitmore

Nicholas A. Whitmore, appellee pro se