MAINE SUPREME JUDICIAL COURT                                          Reporter of Decisions
Decision:      2016 ME 128
Docket:        Wal-16-46
Submitted
  On Briefs:   July 20, 2016
Decided:       August 11, 2016

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

KRISTIN (HANSON) HUTT

v.

TODD HANSON

ALEXANDER, J.

[¶1]   Todd Hanson appeals from a divorce judgment entered in the District Court (Belfast, *Worth, J.*), which ordered, in part, that Kristin (Hanson) Hutt would receive the first $325,000 in net proceeds upon the sale of any of five parcels of real estate owned by the parties to compensate Hutt for her nonmarital interest in one parcel and her investment of her nonmarital funds to pay off a marital debt.  *See* 19-A M.R.S. § 953(1)-(3) (2015).  Hanson argues that the court erred in not specifically addressing each factor listed in section 953(1), clearly erred in its findings of fact, and abused its discretion in its division of property.  Because the record supports the equitable division of marital property ordered by the court, we affirm.

2

## I. CASE HISTORY

[¶2]  After a contested hearing regarding property division and spousal support issues, the court made the following findings, which are supported by the trial record.  *See Ehret v. Ehret*, 2016 ME 43, ¶ 2, 135 A.3d 101.

[¶3]  When Hutt commenced this action, the parties had been married for about seventeen years.  They have two minor children together; parental rights issues were resolved and were not contested at trial.  The parties own or have an interest in six parcels of real property: (1) a parcel in Northport containing the marital home; (2) a parcel in Northport next to the marital home consisting of forty-eight to fifty acres of land and containing a garage with an apartment over it ("the carriage house lot"); (3) property in Old Town owned by a limited liability company (LLC), "of which the parties collectively own 51%"; (4) property in Bucksport owned by a second LLC, which the parties wholly own; (5) property in Lincoln owned by a third LLC, which the parties wholly own; and (6) an undeveloped parcel in Northport, which was a gift to Hutt alone.

[¶4]  Hutt's mother and stepfather conveyed the carriage house lot as a gift to Hutt alone during the course of the marriage.  Her stepfather intended that Hutt alone would own the parcel, which was unimproved land when it was

transferred. The land, without improvements, is worth $75,000. Hutt and Hanson improved the land with earthwork and by constructing the garage and apartment.

[¶5] During the marriage, Hutt received $250,000 in life insurance proceeds upon her mother's death. Hutt paid off a marital debt related to the property in Bucksport with those funds.

[¶6] Hutt filed a complaint for divorce in January 2015. The parties attended mediation twice and resolved child-related and some property issues prior to the contested trial. After the trial, the court entered a divorce judgment granting the parties a divorce on the ground of irreconcilable marital differences. *See* 19-A M.R.S. § 902(1)(H) (2015).

[¶7] The court set aside to Hutt the undeveloped Northport parcel as her nonmarital property and ordered the parties to sell the remaining five properties, consistent with their agreement at mediation. The court ordered that "[a]fter sale of one or more properties and payment of ordinary closing costs, [Hutt] shall receive the first $325,000 of the net proceeds." The court determined that such an award was "equitable under the circumstances," citing Hutt's contribution of $250,000 of inherited funds to the marital estate and Hutt's $75,000 nonmarital interest in the carriage house lot. The court

ordered the parties to "equally divide the remaining net proceeds from each sale."

[¶8]  The court ordered neither party to pay child support to the other and ordered that each party would claim one child for tax purposes.  Although Hutt argued that she should be paid spousal support, the court declined to make any such award "now or in the future."  Neither party was ordered to pay the other's attorney fees.

[¶9]  Hanson filed this timely appeal.

## II.  LEGAL ANALYSIS

[¶10]  The statute governing disposition of property, 19-A M.R.S. § 953(1), directs that the court "shall divide the marital property in proportions the court considers just after considering all relevant factors."  This direction requires that marital property be divided equitably, though not necessarily equally.  Thus, in *Doucette v. Washburn*, 2001 ME 38, ¶ 24, 766 A.2d 578, we held: "A just distribution of property is not synonymous with an equal distribution.  To the contrary, we have made it clear that a court is not required to divide the marital property equally, but is required to make the division fair and just considering all of the circumstances of the parties."

[¶11]  The governing principle of an equitable, though not necessarily equal, distribution of marital property is emphasized by the factors that section 953(1) lists as included among the relevant factors the court is to consider:

> **A.** The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;
>
> **B.** The value of the property set apart to each spouse; and
>
> **C.** The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live in the home for reasonable periods to the spouse having custody of the children.

[¶12]  In its application of section 953(1) the trial court need not "specifically enumerate [its] findings on each factor," *Shanoski v. Miller*, 2001 ME 139, ¶ 25, 780 A.2d 275, as long as it appears that the court has considered those factors, and all other "relevant factors," 19-A M.R.S. § 953(1), in reaching its decision.  The court is only required to "make findings that are sufficient to inform the parties of the court's reasoning and sufficient for effective appellate review." *Shanoski*, 2001 ME 139, ¶ 25, 780 A.2d 275.  Here, the trial court's findings are sufficient for effective appellate review.

[¶13]  Thus, contrary to Hanson's argument, the court was not required to make specific findings addressing each factor stated in section 953(1).

Further, the court did not clearly err in finding (1) the value of Hutt's nonmarital interest, $75,000, in the carriage house lot, or (2) that Hutt contributed $250,000 in nonmarital funds to the marital estate.[1] *See Starrett v. Starrett*, 2014 ME 112, ¶ 11, 101 A.3d 435; *Burrow v. Burrow*, 2014 ME 111, ¶ 22, 100 A.3d 1104.

[¶14]  "We defer to the trial court's determination of witnesses' credibility . . . ."  *Violette v. Violette*, 2015 ME 97, ¶ 15, 120 A.3d 667.  The trial court specifically found Hutt's testimony on the land's value to be "persuasive," although Hanson had testified to a lower value.  Further, the trial court did not err by relying on Hutt's testimony.  *See Peters v. Peters*, 1997 ME 134, ¶ 14, 697 A.2d 1254 (stating that a court may accept a party's testimony as to the value of his or her own property); *see also Violette*, 2015 ME 97, ¶ 27, 120 A.3d 667 (concluding that there was no clear error when the trial court made a finding of a business's value without the benefit of expert testimony).

[¶15]  We review a marital property distribution for an abuse of discretion.  *Viola v. Viola*, 2015 ME 6, ¶ 9, 109 A.3d 634.  Upon review for an abuse of discretion, we ask three questions: "(1) whether factual findings, if

---

[1]  Although the court was imprecise in its terminology—finding that Hutt had reduced the indebtedness on a "mortgage" on certain property when the evidence was that she had paid off a loan that she and Hanson had borrowed for the down payment on that property—the error was harmless.  *See* M.R. Civ. P. 61; *Gordon v. Cheskin*, 2013 ME 113, ¶ 12, 82 A.3d 1221 ("A court's misstatement of fact should be disregarded if it does not affect the substantial rights of the parties.").

any, are supported by the record pursuant to the clear error standard; (2) whether the court understood the law applicable to its exercise of discretion; and (3) given the facts and applying the law, whether the court weighed . . . the applicable facts and made choices within the bounds of reasonableness." *Charette v. Charette*, 2013 ME 4, ¶ 7, 60 A.3d 1264.

[¶16]  Section 953(1) requires the court to set aside to the parties their nonmarital assets prior to dividing the marital property.  *Violette*, 2015 ME 97, ¶ 21, 120 A.3d 667.  Section 953(1)(A) also requires the court to consider the parties' contributions to the marital estate.  Here, the court did not abuse its discretion by ordering an allocation to Hutt of the first $325,000 in proceeds from the future sale of the marital real estate: $75,000 to recognize her nonmarital interest in the carriage house lot, and $250,000 to recognize her contribution of nonmarital funds to pay off a marital debt.

[¶17]  Further, contrary to Hanson's contentions, the court was under no obligation to order that the funds be distributed to Hutt only upon the sale of any particular property.  The court's order was well "within the bounds of reasonableness."  *Charette*, 2013 ME 4, ¶ 7, 60 A.3d 1264.  The court's judgment reflects that it thoughtfully exercised its discretion in dividing the

marital estate after considering the factors required by section 953(1), and the record supports the court's judgment. *See Viola*, 2015 ME 6, ¶ 9, 109 A.3d 634.

The entry is:

Judgment affirmed.

---

**On the briefs:**

Steven C. Peterson, Esq., West Rockport, for appellant Todd Hanson

Joseph W. Baiungo, Esq., Belfast, for appellee Kristin (Hanson) Hutt

Belfast District Court docket number FM-2015-13
FOR CLERK REFERENCE ONLY